UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANGELA M. COX,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 18-cv-2389-FYP-GMH** |
| **KILOLO KIJAKAZI,** | |
| *Acting Commissioner of the Social Security Administration,* | |
| *Defendant.* | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Angela Cox sought disability benefits from the Social Security Administration ("SSA") in 2014.  The agency's administrative law judge ("ALJ") denied her claims in 2018.  After the SSA's Appeals Council declined to review her case, she filed suit in this Court.  In her Motion for Reversal and Award of Benefits, Plaintiff argues that the SSA's application of the 2017 Listing regulations to her 2014 claim was impermissibly retroactive; and alleges a host of other analytical and factual errors by the ALJ.  The Defendant Commissioner of the SSA counters with a Motion for Judgment of Affirmance, arguing that application of the 2017 Listings was proper, and that the ALJ's decision was supported by substantial evidence.

The instant case was referred to Magistrate Judge G. Michael Harvey, who issued his Report and Recommendation on September 1, 2020.  Magistrate Judge Harvey recommended granting Plaintiff's Motion for Reversal in part, denying Defendant's Motion for Affirmance, and remanding the case for further proceedings.  Both parties object to aspects of his Report and Recommendation.  Because this Court agrees with the Magistrate Judge that the ALJ's

application of the 2017 regulations to Cox's claim was impermissibly retroactive, it adopts the Magistrate Judge's Report and Recommendation, vacates the SSA's decision, and remands to the agency for further proceedings.  The Court also considers the additional claims of error raised by Plaintiff.

## BACKGROUND

Cox is 55 years old; she has an IQ of 61 and a sixth-grade education.  *See* ECF No. 1 (Complaint) at 1; ECF 11 (Administrative Record) at 99.  She applied for disability benefits from the SSA on May 20, 2014.  *See* AR at 66.  In her application, Cox cited depression and learning difficulties as her disabling conditions.  *Id.*  The SSA denied her claims on September 19, 2014. *Id.* at 74–75; 112–14.

Cox then filed another application for disability benefits on November 24, 2014, also identifying depression and learning difficulties as her disabling conditions.  *Id.* at 77.  The SSA again denied her claims on June 15, 2015.  *Id.* at 85–86.  Cox proceeded to request reconsideration on August 18, 2015, at which time she supplemented her application, stating that she began "hearing voices" and became "afraid to go out" beginning in May 2015.  *Id.* at 88–98; *see id.* at 118.  The SSA denied her request in December 2015.  *Id.* at 97–98, 100–11, 115–17. Cox then requested a hearing before an ALJ.  *Id.* at 127–28.

ALJ Andrew Emerson held a hearing in Cox's case on January 8, 2018.  *Id.* at 34–64. After the hearing, the ALJ issued a decision on April 4, 2018, concluding that Cox was not disabled under the Social Security Act.  *Id.* at 16–28.  In deciding Cox's case, the ALJ applied the agency's Revised Medical Criteria for Evaluating Mental Disorders ("2017 Listings"), which were finalized in 2016 and became effective on January 17, 2017.  Cox requested review by the Appeals Council, which declined to revisit the ALJ's decision.  The ALJ's decision thus became

the final decision of the Commissioner on August 28, 2018. *Id.* at 1–3, 7–8.

Cox filed her Complaint in this Court on October 17, 2018, challenging the SSA's final decision. *See generally* Compl. The case was referred to Magistrate Judge G. Michael Harvey for full case management. *See* Minute Order, dated Nov. 19, 2018. Cox submitted a Motion for Reversal of Judgment and Award of Benefits on April 2, 2019, which attacked the ALJ's application of the 2017 Listings to her claim and faulted him for committing numerous analytical and factual errors. *See generally* ECF No. 16 (Plaintiff's Motion for Reversal); ECF No. 16-1 (Plaintiff's Memorandum Supporting Motion for Reversal). To remedy the alleged errors, Plaintiff asks the Court to "nullify the retroactive [regulations]," find her disabled, and "remand for [an] award of benefits." Pl. Mot. at 3. The next month, Defendant filed her Motion for Judgment of Affirmance and Opposition to Plaintiff's Motion. *See* ECF No. 18 (Defendant's Motion for Affirmance). Defendant argues that the SSA's decision was legally sound and supported by substantial evidence. *Id.* at 1, 31.

On September 1, 2020, Magistrate Judge Harvey issued his Report and Recommendation in this case. *See* ECF No. 27 (Report & Recommendation). He recommended granting Plaintiff's Motion for Reversal in part, denying Defendant's Motion for Affirmance, and remanding the case for further proceedings before the ALJ. *See* Report & Recommendation at 2, 16, 50–51. The Magistrate Judge determined that the ALJ's application of the 2017 Listings to Cox's claim was impermissibly retroactive, and that the ALJ erred in failing to apply a presumption that Cox's IQ remained stable over time. *Id.* at 15–30. Yet because the record was "not clear that application of the proper listing" would "mandate[] an award of benefits," the Magistrate Judge recommended that the case be remanded to the ALJ, with instructions to apply the Listings in effect when Plaintiff filed her claim and to employ the presumption about the

3

stability of her IQ.  *Id.* at 51.  The Magistrate Judge also considered other claims of error asserted by Cox.  *Id.* at 30–50.  He rejected her claims that (1) the ALJ failed to develop the record, *id.* at 33, (2) the ALJ erred in relying on the vocational expert's testimony, *id.* at 46, and (3) the ALJ relied on conflicting testimony from the vocational expert without giving a reasonable explanation, *id.* at 47–48.  While the Magistrate Judge agreed that the ALJ erred in failing to provide a narrative discussion of Cox's illiteracy in his assessment of her residual functional capacity, *id.* at 35, 40–41, and in neglecting to support his conclusion that Cox could perform her past relevant work with substantial evidence, *id.* at 41–43, the Magistrate Judge deemed those errors harmless.  The Magistrate Judge reasoned that despite the ALJ's failure to explicitly include Cox's illiteracy in his discussion of the RFC, the ALJ nonetheless "included a functional limitation of illiteracy in his hypothetical" to the vocational expert, which demonstrated that he considered her illiteracy.  *Id.* at 35.  The Magistrate Judge also determined that the ALJ's error in finding that Cox could perform her past relevant work was obviated by the ALJ's alternative finding that Cox could perform other jobs available in the national economy.  *Id.* at 43.

Cox filed objections to the Magistrate Judge's Report and Recommendation, *see* ECF No. 29 (Plaintiff's Appeal of Magistrate Judge Decision to District Court), and Defendant lodged additional objections, *see* ECF No. 34 (Defendant's Objections).[1]  Cox argues that the Magistrate Judge should have found her disabled, recommended an immediate award of benefits, and addressed her Administrative Procedure Act ("APA") claims.  *See generally* Pl. Obj.  Attacking the Report and Recommendation from a different angle, the agency contends that the ALJ

---

[1]        Seeking to rebut Defendant's objections and address new issues presented, Cox submitted a Response to Defendant's Objections and asks the Court to accept it as her reply brief.  *See* ECF No. 36 (Plaintiff's Response) at 1; ECF No. 37 (Plaintiff's Motion to File Response).  The Court grants Plaintiff's Motion to file an amended response and will consider the arguments raised in that filing alongside those previously presented.

correctly applied the 2017 Listings to Cox's claim and that Plaintiff would not have been found

disabled even if the ALJ had applied the presumption that IQs remain stable throughout life.  *See*

*generally* Def. Obj.

## LEGAL STANDARD

Local Civil Rule 72.3(c), which mirrors 28 U.S.C. § 636(b)(1), states that "[a] district

judge shall make a de novo determination of those portions of a magistrate judge's findings and

recommendations to which objection is made."  LCvR 72.3(c); *see also Winston & Strawn LLP*

*v. FDIC*, 841 F. Supp. 2d 225, 228 (D.D.C. 2012).  District judges, however, are not required to

review those portions of a magistrate judge's report not objected to.  *See Thomas v. Arn*, 474

U.S. 140, 150–51 (1985).  In short, the district judge "may accept, reject, or modify, in whole or

in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.

§ 636(b)(1)(C); *see also* LCvR 72.3(c) ("A district judge may accept, reject, or modify, in whole

or in part, the findings and recommendations of the magistrate judge, or may recommit the

matter to the magistrate judge with instructions.").

Under Section 205(g) of the Social Security Act, district courts review decisions of the

SSA Commissioner to determine whether her findings are supported by substantial evidence in

the record.  *See* 42 U.S.C. § 405(g).  "In reviewing an SSA decision, '[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive.'"  *Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011) (quoting 42 U.S.C. § 405(g)).

In the realm of Social Security, substantial evidence "means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"more than a scintilla, but . . . something less than a preponderance of the evidence."  *Fla. Gas*

*Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002)).  The standard of review in Social Security cases thus calls for "considerable deference to the decision rendered by the ALJ and Appeals Council."  *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994).

When reviewing the SSA's decisions, a court must also determine whether the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits."  *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 65 (D.D.C. 2006) (quoting *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004)).  While the ALJ is "entitled to weigh conflicting opinions and to make his own assessment of their credibility," *Brown v. Bowen*, 794 F.2d 703, 709 (D.C. Cir. 1986), the ALJ "cannot merely disregard evidence which does not support his conclusion."  *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000).  "[B]ecause the broad purposes of the Social Security Act require a liberal construction in favor of disability," evidence is viewed in the light most favorable to the claimant.  *Davis*, 862 F. Supp. at 4.  The Court, however, "is not permitted to re-weigh the evidence and reach its own determination."  *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984).

## ANALYSIS

The Court first explains the statutory and regulatory landscape governing eligibility for disability benefits.  It then considers whether the SSA's application of the 2017 Listings to Cox's claim was impermissibly retroactive.  Deciding that such application was improper, the Court remands the case to the agency so that it can apply the Listings that were in effect when Plaintiff filed her claim.  The Court then addresses Plaintiff's arguments attacking other aspects of the ALJ's decision.

## I.      Statutory and Regulatory Framework

To qualify for disability benefits under the Social Security Act,[2] a claimant must establish

that she is "disabled."  42 U.S.C. § 423(a)(1)(E).  An individual is considered "disabled" if she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).

Additionally, an individual can be determined to be disabled "only if [her] physical or mental

impairment or impairments are of such severity that [s]he is not only unable to do [her] previous

work but cannot, considering [her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The SSA uses a five-step process to determine whether a claimant is disabled under the

Social Security Act.  *See* 20 C.F.R. § 404.1520(a)(4).  First, the claimant must show that she is

not presently engaged in "substantial gainful activity."  *Id.* § 404.1520(a)(4)(i).  Second, she

must demonstrate that she has a single or combination of "severe medically determinable

physical or mental impairment[s]," *id.* § 404.1520(a)(4)(ii), which "significantly limit[]" her

ability to perform "basic work activities," *id.* § 404.1520(c).  Third — and the most critical step

for Cox's challenge — the claimant must show that her impairment is one of those listed in

Appendix 1 to the Commissioner's regulations.  *Id.*, pt. 404, subpt. P, app. 1 (providing Listing

of Impairments).  A claimant who succeeds at Step 3 is conclusively deemed disabled and is

---

[2]      Although the documents cited by the ALJ show that Cox is contesting the denial of her disability benefits application, the ALJ cites to regulatory provisions governing Supplemental Security Income payments.  *See* AR at 16 (stating that November 24, 2014, application was for "supplemental security income"); *but see* AR at 77 (showing November 24, 2014, application was for "DI," *i.e.*, disability insurance).  This discrepancy is of no import, however, as the same standards apply to both sets of claims, even though the standards are codified in different parts of the U.S. Code and the Code of Federal Regulations.

entitled to disability benefits.  *Id.* § 404.1520(d).

If the claimant cannot satisfy the requirements of the SSA's Listings, the Commissioner proceeds to assess the claimant's residual functional capacity ("RFC").  *Id.* § 404.1520(e).  The RFC reflects "the most [the claimant] can still do despite [her] limitations."  *Id.* § 404.1545(a)(1); *accord Ross v. Astrue*, 636 F. Supp. 2d 127, 132 (D.D.C. 2009).  After evaluating the claimant's RFC, the Commissioner proceeds to Step 4, where she assesses whether the claimant has shown that, given her RFC, she cannot perform her "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant proves successful, the burden then shifts to the Commissioner at the fifth and final step to show that the claimant is still capable of "mak[ing] an adjustment to other work" available in the national economy based on her RFC, age, education, and work experience.  *Id.* § 404.1520(a)(4)(v); *cf. Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) ("The claimant carries the burden of proof on the first four steps.").  If the claimant can adjust to other work, then she is not disabled.  But if she cannot, the claimant is disabled and thus eligible for disability benefits.

## II.     SSA's Listing Regulations

### A.     Listing 12.05C and 2017 Revisions

When Cox filed her claim in 2014, the regulations then in effect included Listing 12.05C, which qualified claimants as conclusively disabled at Step 3 if they met three requirements:  (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," *i.e.*, before the age of 22; (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70;" and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05C (2014) (relevant regulations on pages 514–15).[3]

At the time that Cox filed her claim, however, the SSA was in the process of overhauling its regulations.[4]  In 2016, while her claim was still pending, the SSA issued its Final Rule (which would become the 2017 Listings), titled "Revised Medical Criteria for Evaluating Mental Disorders."  *See* 81 Fed. Reg. 66,138–78 (2016) (codified at 20 C.F.R. pt. 404, subpt. P, app. 1). The 2017 Listings deleted the previous Listing 12.05C, while revising Listing 12.05B.  The revised Listing 12.05B still allowed a finding of "[i]ntellectual disorder" based on an IQ of 70 or below, provided that the disorder began prior to the age of 22, but also required more stringent proof of deficits in adaptive functioning, *i.e.*: "significant deficits in adaptive functioning . . . manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning: (a) understand[ing], remember[ing] or apply[ing] information; (b) interact[ing] with others; (c) concentrat[ing], persist[ing], or maintain[ing] pace; or (d) adapt[ing] or manag[ing] oneself."  *See* 81 Fed. Reg. 66,167 (2016).[5]

---

[3]        In relevant part, the 2014 Listing for "[i]ntellectual disability," Section 12.05, provides as follows:

> 12.05 *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05C.

[4]        In 2003, the Administration published an Advanced Notice of Proposed Rulemaking, informing the public that it planned to revise "the rules [it] use[s] to evaluate mental disorders," and soliciting comments from interested parties.  *See* 68 Fed. Reg. 12,639 (2003).  The agency followed up in 2010 with a Notice of Proposed Rulemaking ("NPRM"), which explained that the SSA "propose[d] to revise the criteria in the Listing[s] . . . involving mental disorders" to "reflect [its] adjudicative experience, advances in medical knowledge, recommendations from a report [it] commissioned," and previous comments from experts and the public.  *See* Revised Medical Criteria for Evaluating Mental Disorders, 75 Fed. Reg. 51,336–68 (2010); Def. Obj. at 15–16.

[5]        In relevant part, the 2017 revision of Section 12.05B provides that an "Intellectual disorder" may be "satisfied" by meeting the following criteria:

> 1. Significantly subaverage general intellectual functioning evidenced by . . . [a] full scale

9

The agency made the 2017 Listings effective on January 17, 2017, and provided that the

2017 Listings would apply to cases pending as of that date.  *Id.* at 66,138.  The SSA specified:

> The prior rules will continue to apply until the effective date of these final
> rules.  When the final rules become effective [on January 17, 2017], we will
> apply them to new applications filed on or after the effective date of the
> rules, and to *claims that are pending on or after the effective date*.

*Id.* (emphasis added).  The agency further stated its expectations for federal courts reviewing its

decisions and for agency proceedings on remand:

> We expect that Federal courts will review our final decisions using the rules
> that were in effect at the time we issued the decisions.  If a court reverses
> our final decision and remands a case for further administrative proceedings
> after the effective date of these final rules, we will apply these final rules to
> the entire period at issue in the decision we make after the court's remand.

*Id.* at n.1.

B.     Application of the 2017 Listings to Cox's Claims

ALJ Emerson applied the revised 2017 Listings to Plaintiff's claim and did not consider

whether Cox was eligible for benefits under the previous Listing 12.05C.  *See* AR at 21–22

(considering whether Cox qualified for revised 12.05A or 12.05B Listings).  Cox argues that

applying the revised regulations to her 2014 claim was impermissibly retroactive, *see* Pl. Mot. at

18, and the Magistrate Judge agreed, *see* Report & Recommendation at 15–30.  The agency,

---

(or comparable) IQ score of 70 or below on an individually administered standardized test
of general intelligence; . . . and
2. Significant deficits in adaptive functioning currently manifested by an extreme limitation
of one, or marked limitation of two, in the following areas of mental functioning:
    a. Understand, remember, or apply information (see 12.00E1); or
    b. Interact with others (see 12.00E2); or
    c. Concentrate, persist, or maintain pace (see 12.00E3); or
    d. Adapt or manage oneself (see 12.00E4); and
3. The evidence about your current intellectual and adaptive functioning and about the
history of your disorder demonstrates or supports the conclusion that the disorder began
prior to your attainment of age 22.

*See* 81 Fed. Reg. 66,167 (2016).

10

however, contends that the "ALJ's application of the 2017 mental listings to Plaintiff's claim was not impermissibly retroactive because it did not impair rights Plaintiff possessed at the time she acted," did not upset her reliance interests, and did not involve substantively different standards. *See* Def. Obj. at 3–8 (citing *Landgraf v. U.S.I. Film Prods.*, 511 U.S. 244, 280 (1994); and *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002)).

The Supreme Court has stated that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf*, 511 U.S. at 265. As a result, "the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Id.* (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). Thus, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208. As a corollary, "a statutory grant of legislative rulemaking authority will not . . . be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.*

Both parties agree that the SSA cannot promulgate retroactive rules. *See* Report & Recommendation at 16 ("[N]either party disputes that the Commissioner lacks retroactive rulemaking authority."); 42 U.S.C. § 405(a) (withholding retroactive rulemaking authority from the SSA). The Court's task is therefore to determine whether application of the 2017 Listings to the claim that Cox filed in 2014 was retroactive. In *Landgraf v. U.S.I. Film Products,* the Supreme Court noted that a regulation operates retroactively if it "impair[s] rights a party

possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *See* 511 U.S. at 280.  A court's determination that "a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270.

The D.C. Circuit has provided guidance on how that "process of judgment" should take place.  *See Nat'l Mining Ass'n*, 292 F.3d 849.  In *National Mining Association*, mine operators, insurance companies, and a mining trade association challenged the Secretary of Labor's revisions to regulations governing the adjudication of miners' claims under the Black Lung Benefits Act, which "provid[ed] benefits to coal miners who are totally disabled due to . . . black lung disease." *Id.* at 854–55.  Appellants attacked several of the Secretary's new rules as impermissibly retroactive.  *Id.* at 859.  In the first part of the process prescribed by *Landgraf* — which requires consideration of the "nature and extent of the change in the law," *see* 511 U.S. at 280 — the Court of Appeals determined that "[t]he critical question is whether a challenged rule establishes an interpretation that 'changes the legal landscape.'" *Nat'l Mining Ass'n*, 292 F.3d at 859 (quoting *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 423 (D.C. Cir. 1994)).  The court elaborated that "[t]his inquiry involves a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 859–60 (cleaned up).  The key, therefore, is whether "a rule 'changes the law in a way that adversely affects [a party's] prospects for success on the merits of the claim.'" *Id.* at 860 (quoting *Ibrahim v. District of Columbia*, 208 F.3d 1032, 1036 (D.C. Cir. 2000)).  As for the second part of the *Landgraf* analysis — which requires examination of "the degree of connection between the operation of the new rule and a relevant past event," *see* 511

12

U.S. at 270 — the Court of Appeals held that the relevant past act in the adjudicative context is the filing of a claim. *Nat'l Mining Ass'n*, 292 F.3d at 860 (stating that applying substantively different rules to "pending claims" is impermissibly retroactive); *see also id.* at 867 ("[I]t would be unlawfully retroactive to apply the definitions to any claims other than those *filed* on or after the regulations' effective date.") (emphasis added). *National Mining Association* thus yielded the definitive test for retroactivity in this jurisdiction, which is succinctly stated as follows:

> In analyzing each new regulation, we first look to see whether it effects a substantive change from the agency's prior regulation or practice. If a new regulation is substantively consistent with prior regulations or prior agency practices, and has been accepted by all Courts of Appeals to consider the issue, then its application to pending cases has no retroactive effect. If a new regulation is substantively inconsistent with a prior regulation, prior agency practice, or any Court of Appeals decision rejecting a prior regulation or agency practice, it is retroactive as applied to pending claims.

*Id.* at 860.

In this case, the Magistrate Judge correctly applied the *National Mining* test to find that the ALJ's application of the 2017 Listings to Cox's claim was impermissibly retroactive. *See* Report & Recommendation at 16, 19, 22–23. The Magistrate Judge embarked on his analysis of the retroactivity question by examining whether the 2017 Listings effected a substantive change from the 2014 Listings. *Id.* at 23. He determined that "the revised 201[7] Listing altered the standard for evaluating intellectual disability claims and 'raised the bar' for claimants like Cox seeking to establish disability based on an intellectual disorder." *Id.* at 23, 26–28. The Court agrees with his conclusion. Previously, Cox could have received disability benefits upon proving, under Listing 12.05C, that she had (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," *i.e.*, before the age of 22; (2) an IQ of 60 to 70; and (3) "a physical or other mental

impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05C (2014). Cox argues that she meets these criteria. *See* Pl. Mot. at 1; *see also* Report & Recommendation at 26 ("It appears from the record . . . that Plaintiff might meet the three requirements of 12.05C in the 2014 Listing."). With respect to the second two requirements of Listing 12.05C, Cox's IQ is 61, *see* AR at 541; and the ALJ found that she had three severe impairments, namely learning disorder, depressive disorder, and anxiety disorder, which "significantly limit [her] ability to perform basic work activities," *see* AR at 18. As for the requirement that her intellectual disorder initially manifested before age 22, Cox is entitled to rely on the presumption that IQ "remain[s] stable over time in the absence of a change in a claimant's intellectual functioning." Report & Recommendation at 28 (quoting *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006)). The Magistrate Judge determined that the ALJ erred in failing to apply this presumption of intellectual stability; and observed that with the benefit of the presumption, "Plaintiff may well have met . . . 12.05C's final requirement . . . because there does not appear to be any evidence in the record of a sudden trauma that could have been its cause." *Id.*[6]

The revised 2017 Listings, however, removed that avenue for proving disability and instead required Cox to meet more stringent standards under revised Listing 12.05B. Under the 2017 Listing, Cox had to prove the first two elements of the previous Listing 12.05C, and also had to show that she had "significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental

---

[6]     The Magistrate Judge recommended a remand to the SSA so that the ALJ could apply the presumption that a claimant's IQ remains stable over time. *See id.* at 15–16. Neither party disputes that the ALJ erred in failing to apply the presumption. Rather, both parties argue only that they should prevail once the presumption is applied. *See* Pl. Obj. at 3, 18; Def. Obj. at 8. Those are arguments that should be made to the ALJ on remand.

functioning": the ability to "[u]nderstand, remember, or apply information;" to "[i]nteract with others; to "[c]oncentrate, persist, or maintain pace;" and to "[a]dapt or manage oneself." *See* 81 Fed. Reg. 66,167 (2016).  The ALJ determined that she did not meet the altered criteria in the revised Listing 12.05B and therefore subjected her to the additional hurdles imposed by Steps 4 and 5 of the SSA's disability analysis.  *See* AR at 22–28; *supra* 6–7.  The new regulations thus "change[d] the legal landscape" of Cox's quest to receive disability benefits.  *See Nat'l Mining Ass'n*, 292 F.3d at 864; Report & Recommendation at 30; AR at 62 (quoting ALJ Emerson as commenting that the new Listings differed from previous Listing 12.05C).  The 2017 Listings were therefore impermissibly retroactive as applied to Cox's claim, which was pending when the new rules came into effect on January 17, 2017.  *See Nat'l Mining Ass'n*, 292 F.3d at 860; 81 Fed. Reg. 66,138 (2016).

The Commissioner nevertheless strongly contests the Magistrate Judge's conclusion. *See, e.g.*, Def. Obj. at 1–7.  Defendant argues that the SSA is imbued with broad statutory authority to promulgate regulations, that the regulatory text makes clear that the 2017 Listing for intellectual disability applies to Plaintiff's case, and that "the final rule [establishing the 2017 Listings] is not retroactive."  *Id.* at 11–12, 15.  The SSA insists that the agency properly applied the revised regulations to claims pending on or after the effective date, as directed by the 2017 Listings themselves.  *See* Def. Mot. at 15.  Indeed, it appears that the SSA would consider the application of a rule retroactive only if the agency reopened a final determination and used the new standard to adjudicate previously decided claims.  *See id.* at 16; Report & Recommendation at 17.  The Court rejects this cramped definition of retroactivity, as it does not comport with *National Mining Association*'s instruction that a new regulation that "is substantively inconsistent with a prior regulation" is "retroactive as applied to pending claims."  *See Nat'l*

*Mining Ass'n*, 292 F.3d at 860.  Defendant further argues that the 2017 Listing for intellectual disability is "obvious[ly]" and "notabl[y]" similar to the previous Listing and therefore did not effect a "substantive change" that is impermissibly retroactive.  *See* Def. Obj. at 6–8.  That argument falls flat because it is beyond debate that the revised 2017 Listing required an additional showing of "deficits in adaptive functioning" in specific categories, which Cox would not have had to satisfy under the eliminated Listing 12.05C.  *Compare* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05 (2014), *with* 81 Fed. Reg. 66,167 (2016).

In support of her arguments, the Commissioner cites decisions by other courts that have allowed the SSA to apply new regulations to pending claims.  *See* Def. Mot. at 15 (citing *Ray v. Comm'r of Soc. Sec.*, No. civ-18-638, 2019 WL 1474007, at *2–3 (W.D. Okla. Apr. 3, 2019); *Kibe v. Berryhill*, No. 18-228, 2019 WL 1226723, at *2–3 & nn.2–3 (W.D. Pa. Mar. 15, 2019); *Harrison v. Berryhill*, No. 5:17-cv-255, 2018 WL 4576782, at *4 (E.D.N.C. May 24, 2018)); [7] *see also* Def. Obj. at 14 (collecting cases where courts decided "application of the revised mental impairment listings in pending cases is proper").  Those opinions, however, are not binding.

---

[7]       In his Report and Recommendation, the Magistrate Judge deftly dispensed with the authorities cited by Defendant.  *See* Report & Recommendation at 23 n.17.  He wrote:

> [T]he Commissioner relies upon three Social Security cases from outside this jurisdiction. ECF No. 17 at 16–17.  Two of those cases, however, sidestepped the issue of retroactivity altogether.  *Kibe v. Berryhill* actually applied the 2014 Listing because it was the rule "in effect at the time the ALJ issued his decision."  No. CV 18-228, 2019 WL 1226723, at *2 (W.D. Pa. Mar. 15, 2019), *aff'd sub nom. Kibe v. Comm'r Soc. Sec.*, 787 F. App'x 801 (3d Cir. 2019).  And *Harrison v. Berryhill* expressly did not decide whether to apply the former or revised listing to the plaintiff's claim because "the record fail[ed] to establish that [the plaintiff's] impairments met either Listing."  No. 5:17-CV-00255-FL, 2018 WL 4576782, at *5 (E.D.N.C. May 24, 2018), *report and recommendation adopted*, 2018 WL 3993393 (E.D.N.C. Aug. 21, 2018).  As for the third case — *Ray v. Commissioner of Social Security* — while it assessed the retroactivity of the revised listing, its analysis is of limited precedential value because it relied primarily on *Bradley*, a case limited by later Supreme Court and D.C. Circuit caselaw, *see supra* note 14, and the relevant portion of the analysis is essentially dicta, as the court ultimately found that the plaintiff "would not meet the listing under either set of rules."  No. CIV-18-00638-SM, 2019 WL 1474007, at *3 (W.D. Okla. Apr. 3, 2019).

Instead, this Court is obligated to apply *National Mining Association*, which supports the Magistrate Judge's conclusion that the 2017 Listing is impermissibly retroactive as applied to Cox's case.

In any event, whether the application of new SSA regulations to pending cases is retroactive remains an unsettled question in other circuits. *See Portlock v. Barnhart*, 208 F. Supp. 2d 451, 457 (D. Del. 2002) (indicating it was "troubled" by courts' "lack of agreement" on retroactivity question); *Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1129–30 (N.D. Cal. 2001) (noting limited and differing authorities on retroactive application of Listing 9.09 for obesity); *Gerald v. Berryhill*, No. 3:17-cv-5752018, 2018 WL 7364649, at *12 (M.D. Pa. Oct. 12, 2018) (collecting divergent cases on whether SSR 16-3p applies retroactively). The decisions finding no retroactive effect "are marked by surprisingly little analysis of the problems associated with that conclusion." *Portlock*, 208 F. Supp. 2d at 459; *see, e.g.*, *Fulbright v. Apfel*, 114 F. Supp. 2d. 465, 476 (W.D.N.C. Sept. 11, 2000) (simply stating that new regulation was "law in effect"); *Rowden v. Saul*, No. civ-19-361, 2020 WL 1172714, at *6 (same); *Glenn v. Massanari*, No. civ-00-4184, 2001 WL 1003075, at *2 (E.D. Pa. Aug. 27, 2001) (emphasizing that text of SSA's new rule clearly applied to pending claims).[8] Given the paucity of persuasive analysis in those opinions, the Court is not inclined to give them any weight.

Defendant deploys several other arguments to defend the agency's application of the revised rules. The Commissioner argues that a "court must 'apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory

---

[8]    Defendant similarly argues that the regulations themselves specifically stated that they would apply to pending applications. *See* Def. Mot. at 12. Although the regulations must clearly convey that they apply to previously filed claims to overcome the presumption against retroactivity, clear regulatory text cannot imbue the SSA with retroactive rulemaking authority. *See* 42 U.S.C. § 405(a) (withholding retroactive rulemaking authority from the SSA); Report & Recommendation at 16.

direction or legislative history to the contrary.'"  Def. Mot. at 15 (relying on *Bradley v. Sch. Bd.*

*of Richmond*, 416 U.S. 696, 711 (1974)); *id.* at 16.  As the Magistrate Judge pointed out,

however, four decades have passed since the Supreme Court decided *Bradley*, and the case "has

been narrowed to apply to remedial provisions, not substantive obligations or rights under a

statute," such as those at issue in this case.  *See* R. & R, at 20 n.14; *Gersman v. Grp. Health*

*Ass'n, Inc.*, 975 F.2d 886, 898–99 (D.C. Cir. 1992) ("[T]he *Bradley* presumption of applicability

of law as of the time of decision must pertain to remedial provisions — not substantive

obligations or rights under a statute." (cleaned up)).

      Nor is the Court persuaded by the Commissioner's reading of *Landgraf*, 511 U.S. at 244,

or her proposed interpretation of *National Mining Association*, 292 F.3d 849.  *See* Def. Obj. at 3–

8.  Specifically, Defendant argues that applying the revised rules "did not impair rights Plaintiff

possessed at the time she acted, increase her liability for past conduct, or impose new duties with

respect to transactions already completed."  Def. Obj. at 3 (citing *Landgraf*, 511 U.S. at 280; and

*Nat'l Mining Ass'n*, 292 F.3d at 859); *see id.* at 4–5.  In the agency's view, the 2017 regulations

did not impair Cox's rights because plaintiffs like Cox lack any substantive right to benefits, as

even the "recipients of public benefits have no substantive right that guarantees them continued

receipt of those benefits."  *Id.* at 3–4.  As applied to Cox, this argument is belied by the caselaw

prohibiting retroactive changes to regulations, discussed *supra*.  Changing the standards that

apply to the adjudication of Cox's claim while her case is pending would very much impair the

rights that she had when she initially filed her claim.  *See Landgraf*, 511 U.S. at 280; Pl. Resp. at

14; *see also Lindh v. Murphy*, 521 U.S. 320, 327 (1997) ("[R]evisions of prior law to change

standards of proof and persuasion in a way favorable to a [party] . . . affect[s] substantive

entitlement to relief.").  Because the revised rules indeed "impair[ed] rights [that Cox] possessed

at the time she acted," they were impermissibly applied to her claims.[9]  *Landgraf*, 511 U.S. at 280.

Further, the Commissioner contends that the new regulations did not upset any of Cox's reliance interests.  *See* Def. Obj. at 4–5.  While reliance interests are relevant in retroactivity jurisprudence, *see Landgraf*, 511 U.S. at 1499, the test for whether a rule is impermissibly retroactive is more specific than merely assessing whether a plaintiff relied on the previous rule: it requires determining whether a new rule effects a substantive change from the agency's prior regulation or practice, and examining the rule's impact on the prior consequences of past actions, as the Court has done here.  *See Nat'l Mining Ass'n*, 292 F.3d at 860; *supra* 12–15; *cf. DIRECTV, Inc. v. FCC*, 110 F.3d 816, 826 (D.C. Cir. 1997) (stating regulations that merely "upset[] expectations based on prior law" are not retroactive).  That analysis has led the Court to conclude that applying the 2017 regulations to Cox's 2014 claim was impermissibly retroactive, and that the agency must instead apply the regulations that were in place when Cox filed her claim.

C.   Remedy

Having found application of the new rules to Cox's claim unlawfully retroactive, the Court must provide an appropriate remedy.  Cox argues that she is entitled to an immediate

---

[9]     Defendant makes much ado about whether Cox's right to benefits have "vested."  Def. Obj. at 4.  The case she relies on, *Abington Mem'l Hosp. v. Burwell*, 216 F. Supp. 3d 110, 142 (D.D.C. 2016), does not support the agency's position.  *Abington* distinguished the "past legal consequences of past actions" from "the future effect of past actions," when considering whether a Department of Health and Human Services' rule that adjusted wage data the plaintiff hospitals had submitted before the rule's enactment operated impermissibly retroactively.  *See* 216 F. Supp. at 143–44; Pl. Resp. at 14–15.  The court highlighted that the agency "simply used historical data . . . to calculate the prospective payment rate," and thus did not tread upon "any vested right of the hospitals."  *Abington*, 216 F. Supp. 3d at 143–44 (quoting *Regents of the Univ. of Cal. v. Burwell*, 155 F. Supp. 3d 31, 44 (D.D.C. 2016)).  Constructing a wage index to determine future compensation is notably distinct from changing the substantive standard used to evaluate a claim to a statutory right, after the claim has already been filed.  *See Lindh v. Murphy*, 521 U.S. at 327; Pl. Resp. at 14.

award of benefits because she meets the requirements of Listing 12.05C, which must be applied in her case. *See* Pl. Obj. at 1–2, 19; Pl. Resp. at 7–11. Opposing an award of benefits, the Commissioner urges the Court to remand the case to the agency. *See* Def. Obj. at 12–18, 24–25; Def. Mot. at 17–18.

To obtain a judgment reversing the SSA's decision and ordering an immediate award of benefits, plaintiffs must clear a "high bar." *Perkins v. Berryhill*, 379 F. Supp. 3d 1, 8 (D.D.C. 2019). Only when "the evidence on the record as a whole is clearly indicative of disability and additional hearings would serve no purpose other than to delay the inevitable receipt of benefits" is an immediate award of benefits proper. *See Price v. Berryhill*, No. 16-2469, 2018 WL 4381098, at *9 (D.D.C. Feb. 14, 2018) (cleaned up); *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 35–36 (D.D.C. 2013); *Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111–12 (D.D.C. 2010). When courts have granted an immediate award of benefits, they have stated that "it would be virtually impossible for [the ALJ] to find against [the] plaintiff upon remand." *Lockard v. Apfel*, 175 F. Supp. 2d 28, 34 (D.D.C. 2001).

The Court agrees with the Magistrate Judge that an award of benefits is not inevitable in this case. *See* Report & Recommendation at 51. While Cox clearly met two of the three criteria to qualify as disabled under Listing 12.05C, the ALJ could still find that "evidence in the record rebuts the presumption that the onset of Plaintiff's intellectual disorder occurred before she was 22-years-old." *Id.*; *see also id.* at 26–27 (finding that Cox satisfied two of Listing 12.05C's three criteria). Because of this possibility, the Court is unable to order an immediate award of benefits for Plaintiff. *See Lockard*, 175 F. Supp. 2d at 34.[10] It therefore concurs with the Magistrate

---

[10]   Plaintiff argues that the case should not be remanded so that the agency may "hunt for evidence that her cognitive dysfunction 'might' have been drug-induced." Pl. Obj. at 1. But it is for the ALJ to determine, in the first instance, what evidence should be admitted on remand.

Judge that the case should be remanded for the SSA to evaluate Cox's claims under the Listings that were in effect when her claim was filed in 2014, with the benefit of the presumption of stability in her IQ.  *See* Report & Recommendation at 30.

In addition to requesting relief for her individual case, Cox asks the Court to "strike the language of the final rule regarding retroactive application," and "restore the 2014 Listing 12.05C to the agency's regulations." *See* Pl. Obj. at 15–16.  She contends that the revised rules violate the APA because the 2017 Listings (1) were issued without proper notice and comment, (2) were not the logical outgrowth of the agency's notice of proposed rulemaking, (3) were arbitrary and capricious, and (4) were in excess of the Commissioner's statutory authority.  *See id.* Pl. Obj. at 5, 7–9, 14; Pl. Resp. at 12, 17.  Cox argues that the Magistrate Judge erred in failing to address her APA claims.  *See* Pl. Obj. at 1; Report & Recommendation at 30 n.20.  She also believes that the 2017 Listings must be set aside so that they will not apply on remand or in continuing disability reviews in her case.  *See* Pl. Obj. at 1 ("[T]he Magistrate's recommended remedy is ineffective unless the Court eliminates the retroactive application of the 2017 Revised Mental Criteria.").

The Court agrees with the Magistrate Judge and Defendant that it not necessary to consider Plaintiff's claims under the APA, which challenge the validity of the 2017 Listings.  *See* Report & Recommendation at 30 n.20; Def. Obj. at 12 (arguing "the proper remedy is to remand the case with instructions to apply the prior listing").  Because the Court has determined that Cox's claim should be assessed under the 2014 Listings that were in effect when she filed her claim and has ordered a remand for the agency to apply the 2014 regulations, *supra* at 19–20, Plaintiff will receive complete relief on this aspect of her claim.  Accordingly, there is no need to address Cox's challenges to the 2017 Listings, which do not apply to her case.

Nor is the Court persuaded that it should strike the 2017 Listings with respect to all cases that were pending on the effective date, which would essentially provide a nationwide remedy for Plaintiff's individual claim. *See* Def. Obj. at 13. The Court adopts the recommendation of the Magistrate Judge, who focused specifically on the application of the 2017 Listings to Cox's case and did not contemplate a nationwide ruling. *See, e.g.*, Report & Recommendation at 15 ("The undersigned finds that the ALJ's decision was flawed because it relied on the 2017 Listing, which was impermissibly retroactive *as applied* to Plaintiff's pending claim." (emphasis added)); *id.* at 30 & n.20 ("[T]he deletion of 12.05C in the revised 2017 Listing resulted in a 'substantive change' that was impermissibly retroactive *as applied* to the Plaintiff's pending disability claim." (emphasis added)). Plaintiff's arguments to justify a nationwide remedy are undeveloped. *See* Def. Obj. at 13–14. She requests that the Court set aside the 2017 regulations and argues that the agency violated the APA, but she provides no authority that would support granting nationwide relief. *See* Pl. Obj. at 7–9, 22; *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (citations omitted)). The Court would require more authority and analysis to be convinced of awarding such a sweeping remedy, particularly on this record, where the Magistrate Judge limited his analysis of retroactivity to the facts of Plaintiff's case. Moreover, as discussed, courts in other jurisdictions have issued contrary rulings about the applicability of the 2017 Listings to cases pending as of their effective date. *See supra* 16–17; *see also* Def. Obj. at 14 (listing cases). Among the courts that previously have found the SSA's application of its regulations to be impermissibly retroactive, none has ordered nationwide relief. *See, e.g.*, *Portlock v. Barnhart*, 208 F. Supp. 2d at 463; *Kokal v. Massanari*, 163 F. Supp. 2d at 1136; *Cherry v. Barnhart*, 327 F. Supp. 2d 1347, 1360 (N.D. Okla. 2004). On the instant record,

this Court is not inclined to be the first to do so.

Although Plaintiff asserts that it is necessary to strike the 2017 Listings to prevent the ALJ from applying them on remand, *see* Pl. Obj. at 1, the Court expects the agency to comply with an order of this Court that specifically directs it to apply the Listings in effect in 2014. *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *Workman v. Saul*, 19-cv-1252, 2020 WL 417789, at *4 (D.D.C. Jan. 27, 2020) (citing *Sullivan*, 490 U.S. at 886). Moreover, the agency has taken the position before this Court that it is bound to follow the Court's directives on remand and during any continuing disability review in Cox's case. *See* Def. Obj. at 12–13 (citing *Sullivan*, 490 U.S. at 886); 20 C.F.R. § 416.994(b)(2)(iv)(A) (stating that adjudicator in continuing disability review applies "the same listing used to make our most recent favorable decision"). Given the SSA's representations and the caselaw requiring agencies to follow remand orders, the Court is satisfied that the agency will abide by the Court's ruling and will apply the 2014 Listings on remand and in any future review of Cox's case.

### III.    Plaintiff's Other Objections

#### A.    Treating Physician Rule

Cox also contends that the Magistrate Judge failed to address her argument that the ALJ erred in not applying the "treating physician rule," which required the ALJ to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Colleen Hawthorne. *See* Pl. Mot. at 12; Pl. Obj. at 1, 16–17. Plaintiff is correct that ALJs must give "controlling weight" to a treating source's medical opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  If the ALJ declines to give a treating

physician's opinion controlling weight, he must "explain his reasons," and can do so by "not[ing]

the contradictory evidence in the record."  *Williams v. Shalala*, 997 F.2d 1494, 1498–99 (D.C.

Cir. 1993); *see* Def. Mot. at 18.

 Here, Dr. Hawthorne found that Cox's symptoms would cause her to be absent from

work "about twice a month" and that she "has only a fair ability to deal with the public, use

judgment, interaction with supervisors, related predictably in social situations, deal with work

stresses, maintain attention and concentration, behave in an emotionally stable manner, and

understand, remember, and carry out complex and detailed job instructions."[11]  AR at 25; *see* Pl.

Obj. at 16 (citing AR 317–22).  Plaintiff notes that these findings were corroborated by the

assessments of Dr. Rebecca Brosch, who determined that Cox's functioning was "in the

extremely low range of intelligence."  Pl. Obj. at 16; *see* Pl. Resp. at 2–3; AR 537–43 (also

reporting that Cox's verbal comprehension index and full-scale IQ scores were 61).  The ALJ

gave "partial weight" to Dr. Hawthorne's assessment, which he found "mostly consistent with

the medical evidence."  The ALJ explained, however, that Dr. Hawthorne's opinions were "not

entirely consistent" with "the mental status examinations of other medical practitioners" and Dr.

Hawthorne's "own mental status findings, which documented cooperative behavior, goal-

directed thoughts, average intelligence, adequate insight and judgment, and intact memory."  *See*

AR 25 ("Dr. Hawthorne's opinion is also not consistent with the [Global Assessment of

Functioning scores] of 56 and 64 she assigned in treatment . . . .").  Because the ALJ found Dr.

---

[11]  In addition, Dr. Hawthorne opined that Cox has "acute heightened cognitive impairment," "poor
functioning," "highly impaired/limited" reading and writing skills, and "poor attention, concentration, and focus."
AR at 318.  She also noted that Cox has depression characterized by sleep disturbance, decreased energy, feelings of
worthlessness, and difficulty concentrating, in addition to anxiety characterized by apprehensive expectation and
vigilance and scanning behaviors.  *Id.* at 320–21.

Hawthorne's opinion to be internally inconsistent and in conflict with other evidence in the record, he was not required to give that opinion controlling weight.  Further, the ALJ adequately discharged his duty to "explain his reasons" by specifying the internal consistency issues in Dr. Hawthorne's opinion and citing the contradictory evidence in the record.  *See* AR at 25 (citing *id.* at 284–91, 398, 413, 476–527).

That contradictory evidence consisted of statements from several medical professionals and social workers.  *See* AR at 25 (citing *id.* at 284–91, 398, 413, 476–527); *see also id.* at 398 (progress note from Dr. Crysta Chatman); *id.* at 413 (progress note from Nurse Practitioner Amy Patten); *id.* at 476–79 (progress notes from Dr. Allen Gore); *id.* at 284–91 (report from Contemporary Family Services, Inc.); *id.* at 480–92, 520–27 (notes of social worker Linda Teghen); *id.* at 517–19 (notes of social worker Henry Jusu).  Cox contends that the ALJ improperly used the opinions of social workers to discount the determinations of her physicians.  *See* Pl. Mot. at 13; Pl. Resp. at 3–4.  Under the agency's regulations, an ALJ who relies on the contradictory observations of social workers "must explain the reasons" for privileging the nonmedical source's opinion over a medical professional's evaluation.  *See* 20 C.F.R. § 404.1527(f)(2).  Here, however, the ALJ did not depend on the opinions of social workers to discount Dr. Hawthorne's opinion because he also cited the conflicting opinions of several medical professionals.  *See* AR 25 (citing *id.* at 398, 413, 476–79).[12]  He therefore had no obligation to explain a path of reasoning that he did not choose to take.

Still, "[t]he adjudicator generally should explain the weight given to opinions from

---

[12]     Several doctors and a nurse practitioner found that Cox was "alert and in no apparent distress" and "demonstrate[d] good judgment and insight."  *Id.* at 398; *id.* at 413 (same and also stating that Cox had "appropriate mood and affect" and her "recent and remote memory [was] intact"); *id.* at 476–79 (noting Cox's "good" memory and "improving psychiatric condition").

[nonmedical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2).  While the ALJ did not explicitly "explain the weight" given to the opinions of social workers, he cited their opinions as being consistent with other evidence in the record, and "consisten[cy] with the evidence as a whole" is an acceptable reason for crediting evidence.  *See id.* § 404.1527(f)(1); AR at 25.  Thus, by citing to the record, the ALJ adequately ensured that his reasoning was intelligible.  *See Williams v. Shalala*, 997 F.2d at 1498–99 ("That the ALJ did not expressly state his reason for not applying the treating physician rule is of no moment because he noted the contradictory evidence in the record, which record supplies the reason.").  Accordingly, there is no basis to remand the case to correct a violation of the treating physician rule.  Although Plaintiff identifies myriad reasons to find fault with the ALJ's assessment, *see* Pl. Resp. 2–7, this Court "is not permitted to re-weigh the evidence and reach its own determination."  *Maynor*, 597 F. Supp. at 460.

    B.  <u>Processing Speed</u>

    Cox argues that her "extremely low [p]rocessing [s]peed of 59 was disabling on its own." *See* Pl. Obj. at 14; Pl. Mot. at 17.  Neither the Commissioner nor the Magistrate Judge addressed this argument.  *See* Pl. Obj. at 14 (arguing that Defendant conceded this point).  Although Cox's processing speed alone does not dispositively settle her disability status, it appears that the ALJ should have considered Plaintiff's processing speed when determining her RFC, as the ALJ is required to consider "all of the relevant evidence in the case record" when analyzing a claimant's RFC.  *See* Social Security Ruling 96-8p; *see also Butler v. Barnhart*, 353 F.3d 992, 1000 (D.C. Cir. 2004) (stating that RFC "is a 'function-by-function' inquiry based on all of the relevant evidence of a claimant's ability to do work").  On remand, therefore, if the ALJ proceeds to Step

4 of the disability analysis, he should factor in Cox's processing speed when determining her RFC. *Id.*

    C.    <u>Past Relevant Work</u>

Cox argues that the ALJ's finding at Step 4, where he determined that she could perform her past relevant work, was unfounded. *See* Pl. Mot. at 28 & n.24; Pl. Resp. at 5–7 (noting ALJ's "failure to apply [the] SSA's definition of "past relevant work"). Past relevant work is defined as work that (1) was performed within the last 15 years, (2) qualifies as "substantial gainful activity," and (3) "lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560. The Magistrate Judge agreed that the "ALJ's finding is not support[ed] by substantial evidence" because the ALJ failed to establish that Cox's past work was indeed past *relevant* work. *See* Report & Recommendation at 41. The Commissioner objects to his conclusion. *See* Def. Obj. at 23 ("The ALJ explained that the RFC finding was supported by . . . [Cox] working part-time in retail sales and commercial cleaning. Given this evidence, the ALJ reasonably accounted for Plaintiff's mental limitations . . . in the RFC and properly found no greater limitations were warranted."). The Court concurs with the Magistrate Judge that the ALJ erred, but that the error was harmless because the ALJ made an alternative finding at Step 5 that Plaintiff could perform other jobs. *See* Report & Recommendation at 41; *see also Reynolds v. Astrue*, 252 F. App'x 161, 165 (9th Cir. 2007) ("[W]hile we agree . . . that the ALJ committed legal error in the step-four analysis . . . , that error is harmless given the ALJ's RFC assessment and step-five determination).

## CONCLUSION

For the foregoing reasons, the Court will adopt the Report and Recommendation of the Magistrate Judge in full. In addition, the Court will instruct the ALJ to consider and discuss

Cox's processing speed should he be required to determine her RFC on remand.  *See supra*

Section III.B.  The Court will therefore grant in part and deny in part Plaintiff's Motion for

Reversal, and it will deny Defendant's Motion for Affirmance.  The Commissioner's decision is

vacated, and Cox's case is remanded to the agency for further proceedings consistent with this

Memorandum Opinion and the Magistrate Judge's Report and Recommendation.  A separate

Order so stating will issue this day.


Florence Y. Pan
United States District Judge


Date:   January 19, 2022

28